**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

CHRISTOPHER W. SHIPMAN,          )
                                 )
        Plaintiff,            )
                                 )
v.                               )     Case No. CIV-17-233-JHP-KEW
                                 )
COMMISSIONER OF SOCIAL           )
SECURITY ADMINISTRATION,         )
                                 )
        Defendant.            )

**REPORT AND RECOMMENDATION**

Plaintiff Christopher W. Shipman (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

(10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 54 years old at the time of the ALJ's latest decision. Claimant completed his high school education. Claimant has worked in the past as a dishwasher at a casino, housekeeper at a bingo hall, factory lineman, and retail maintenance clean up crew. Claimant alleges an inability to work beginning August 3, 2006 due to limitations resulting from emotional and psychological conditions.

### Procedural History

On August 3, 2006, Claimant protectively filed for supplemental security income pursuant to Title XVI (42 U.S.C. §1381, *et seq.*) of the Social Security Act.  Claimant's application was denied initially and upon reconsideration.  On September 5, 2008, Administrative Law Judge ("ALJ") Lantz McClain conducted an administrative hearing in Poteau, Oklahoma.  On November 5, 2008, the ALJ issued an unfavorable decision.  After appeal, this Court reversed the decision and remanded the case on March 31, 2010.

A second administrative hearing was conducted by ALJ Michael Kirkpatrick on January 4, 2011.  The ALJ entered an unfavorable decision on February 10, 2011.  The decision was again reversed by this Court on March 13, 2013.

A third administrative hearing was conducted on September 12, 2014 by ALJ James Bentley.  He entered an unfavorable decision on October 31, 2014.  Defendant moved to reverse and remand the decision which was granted by this Court on August 27, 2015.

A fourth administrative hearing was conducted by ALJ Lantz McClain on December 12, 2016 by video with Claimant appearing in Poteau, Oklahoma and the ALJ presiding from Tulsa, Oklahoma.  A fourth unfavorable decision was entered on April 18, 2017.  Claimant directly appealed the decision to this Court.  20 C.F.R. §§ 404.984, 416.1484.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation.  He determined that while Claimant suffered from severe impairments, he retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with certain non-exertional limitations.

### Error Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to properly assess the opinion of Claimant's treating psychiatrist; and (2) failing to include all of his limitations in the RFC.

### Credibility Determination

In his decision, the ALJ determined Claimant suffered from the severe impairments of dysthymia and agoraphobia.  (Tr. 1133).  The ALJ concluded Claimant retained the RFC to perform work at all exertional levels with the non-exertional limitations of being able to perform simple, repetitive tasks, only being able to relate to supervisors and co-workers on a superficial basis, and being unable to work with the public.  (Tr. 1135).

After consultation with a vocational expert, the ALJ found Claimant could perform the representative jobs of warehouse worker, and hand packer, both of which were found to exist in sufficient numbers in the national and regional economies. (Tr. 1141-42).  As

a result, the ALJ found Claimant was not under a disability since January 26, 2007, the filing date of the application. (Tr. 1142).

Claimant contends the ALJ failed to properly assess the opinions of his treating psychiatrist, Dr. Pearl Beguesse. On August 27, 2008, Dr. Beguesse authored a medical source statement which indicated uniformly that Claimant's ability to engage in any of the activities enumerated on the form was "poor" which was defined on the form as "[n]o useful ability to function." (Tr. 369-70). By way of explanation, Dr. Beguesse concluded in the narrative section that "[p]atient has severe social phobia which impacts every facet of his life and interferes with his ability to function on a daily basis." (Tr. 370).

Dr. Beguesse completed a second medical source statement on April 9, 2010 which noted Claimant's condition caused psychomotor agitation or retardation, decreased energy, feelings of guilt or worthlessness, difficulty concentrating or thinking, thoughts of suicide (on occasion), generalized persistent anxiety, motor tension, apprehensive expectation, vigilance and scanning, and recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week. She noted Claimant experienced moderate restriction of activities of daily living and marked difficulty in maintaining social functioning.

(Tr. 1660).

Dr. Beguesse also noted certain work limitations in her statement. She found Claimant was "extremely impaired" in the area of the ability to work in coordination with and proximity with others without being distracted by them. She determined Claimant was "markedly impaired" in the areas of the ability to understand and remember detailed instructions; ability to carry out very short and simple instructions; ability to carry out detailed instructions; ability to maintain attention and concentration for extended periods; ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; ability to interact appropriately with the general public; ability to ask simple questions or request assistance; ability to accept instructions and respond appropriately to criticism from supervisors; ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes; and ability to respond appropriately to changes in the work setting. Claimant was found to be "moderately impaired" in the areas of the ability to remember locations and work-like procedures; ability to understand and remember short and simple instructions; ability to sustain an

ordinary routine without special supervision; ability to make simple work-related decisions; and ability to travel in unfamiliar places or use public transportation. (Tr. 1661-62).

In the narrative portion of the statement, Dr. Beguesse states that

> Patient's symptoms related to her diagnosis of Social Phobia and Depression Disorder not otherwise specified cause significant impact on her ability to function in a work-place setting.

(Tr. 1662).

The ALJ found that the validity of Dr. Beguesse's opinion was suspect because Claimant testified he performed some of the activities for which Dr. Beguesse determined he was limited. For instance, Dr. Beguesse found Claimant could not function independently outside of his home which Claimant testified he often goes out of his home to search with his metal detector, selling found items, and going to Walmart where he used the self checkout to purchase items. (Tr. 1140, 1762-64, 1769). The ALJ also noted Dr. Beguesse stated Claimant was markedly impaired in the ability to carry out very short, simple instructions while performing the activities above, which he determined was inconsistent. He was also found to be markedly limited in asking simple questions or in requesting assistance but the ALJ noted that he interacts with his friend when he uses his metal detector as the friend tells him

likely places to go search for items. Based upon these inconsistencies, the ALJ gave Dr. Beguesse's opinions "no weight." (Tr. 1140).

It is well-established that any time an ALJ rejects the opinion of a treating physician or fails to give it controlling weight, he must provide substantiation for that rejection. An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are:  (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the

9

record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

The ALJ has indicated specific activities in the record which appear to be inconsistent with Dr. Beguesse's findings. These activities are conducted by Claimant regularly according to his own testimony and are not minimal, occasional, or sporadic. Such inconsistencies provide a specific and legitimate basis for the rejection of a treating physician's opinion. *See* Osequera v. Colvin, 658 Fed.Appx. 370, 374 (10th Cir. 2016)(affirming the ALJ's decision to reject the treating physician's opinion that was "inconsistent with the claimant's admitted activities of daily living."). No error is attributed to the rejection of Dr.

Beguesse's opinion.[2]

## RFC Determination

Claimant also contends the ALJ should have included additional restrictions in his ability to engage in basic work activity reflected in the RFC based upon Dr. Beguesse's restrictive medical source statement dated August 27, 2008. As this Court has stated, the rejection of Dr. Beguesse's opinion was not error and, correspondingly, the failure to include his restrictions in the RFC was also not erroneous.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **AFFIRMED**. The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within

---

[2] Claimant also continues to argue that the opinion of Dr. Patricia Walz supported Dr. Beguesse's opinion. Dr. Walz connected Claimant's anxiety and associated problems with concentration and attention to his social phobia and resulting inability to interact with people. (Tr. 141-42; 241). This does not support the extent of far reaching limitation found by Dr. Beguesse. Additionally, the narrative findings of the state agency physicians in Section III of the MRFC form do not support the level of restriction suggested by Dr. Beguesse. (Tr. 185, 260, 743).

fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 14th day of March, 2019.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE